COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Elder and Fitzpatrick


KAREN L. VANWINKLE

v.    Record No. 1237-97-2

VIRGINIA EMPLOYMENT COMMISSION
AND
AMMAR'S, INC.

MEMORANDUM OPINION[*]
PER CURIAM
NOVEMBER 10, 1997


FROM THE CIRCUIT COURT OF WISE COUNTY

> (William B. Harper II; Client Centered Legal
> Services of Southwest Virginia, Inc., on
> briefs), for appellant.
>
> (Richard Cullen, Attorney General; John Paul
> Woodley, Jr., Deputy Attorney General;
> Richard L. Walton, Jr., Senior Assistant
> Attorney General; James W. Osborne, Assistant
> Attorney General, on brief), for appellee
> Virginia Employment Commission.
>
> (Agnis Chakravorty; The Center for Employment
> Law, P.C., on brief), for appellee Ammar's,
> Inc.


     Karen L. Vanwinkle contends that the trial court erred in
affirming a decision of the Virginia Employment Commission
(commission) which disqualified her from receiving unemployment
benefits, on the ground that she was discharged from her
employment for misconduct connected with work under Code
§ 60.2-618(2).  Upon reviewing the record and briefs of the
parties, we conclude this appeal is without merit.  Accordingly,
we summarily affirm the circuit court's decision.  See Rule
5A:27.

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

"Initially, we note that in any judicial proceedings `the findings of the commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.'" Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988) (quoting Code § 60.2-625(A)). "In accord with our usual standard of review, we 'consider the evidence in the light most favorable to the finding by the Commission.'" Wells Fargo Alarm Servs., Inc. v. Virginia Employment Comm'n, 24 Va. App. 377, 383, 482 S.E.2d 841, 844 (1997) (quoting Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554, 1987)).

So viewed, the evidence proved that Vanwinkle worked as a cashier for Ammar's, Inc., t/a Magic Mart Stores, from April 15, 1993, through July 7, 1995. On July 6, 1995, Vanwinkle was ringing up items being purchased by Gena Taylor when a dispute arose concerning some cigarette lighters. Taylor felt that Vanwinkle was being rude to her and twice cursed Vanwinkle. Assistant Manager Kyle Fletcher was assisting other customers when he overheard Vanwinkle tell Taylor, "I'll let you speak with the manager if you'd like." Vanwinkle then activated a "Code Orange," signifying verbal abuse by a customer.

When Fletcher approached, Vanwinkle advised him that Taylor had cursed her. When Fletcher attempted to obtain Taylor's

version of what happened, Vanwinkle continuously interrupted, telling Fletcher, "it's your job to just have her go ahead and leave the store," and "[t]ell her to get out." Vanwinkle told Taylor that she would be finishing her shift soon and asked if Taylor "wanted to discuss this outside." Vanwinkle also grabbed the purchase money from Taylor's hand stating, "give me that money." Fletcher several times asked Vanwinkle "will you please let me get the facts of what's going on." During this period of time, there were other customers and employees nearby.

After Taylor departed the store, Vanwinkle continued to tell Fletcher how he should have handled the situation. Shortly thereafter, an employee advised Fletcher that Taylor wished to speak with him. While Fletcher was talking to Taylor outside of the store, Vanwinkle exited the store. Vanwinkle and Taylor began to exchange words, and Fletcher told Vanwinkle to go home. The customer blew smoke from her cigarette in the direction of Vanwinkle's face and, when she threw her cigarette to the ground, Vanwinkle stated, "that's littering."

> The commission further found that
> [t]he assistant manager then told [Vanwinkle] to go home and as she was walking to her car, the customer called her a "piece of white trash" and a "slut." [Vanwinkle] asked the assistant manager if they could discuss the matter in the office and he said they would discuss it tomorrow. As [Vanwinkle] was walking to her car, she pointed to her buttocks and said to the customer, twice, "kiss this." . . . .
>
> After [Vanwinkle] got in her car, she drove to where the assistant manager and the

– 3 –

> customer were standing and again stated that
> if they were going to continue to discuss the
> matter she needed to be in on it, and she
> requested a meeting. The assistant manager
> again told her they would discuss it
> tomorrow.

The following day, after consulting with her home office, store manager Theresa Jones discharged Vanwinkle. On May 27, 1995, just six weeks earlier, Jones and Fletcher had warned Vanwinkle, following an incident involving a price check, that she needed to act more professionally with customers and co-workers.

Code § 60.2-618(2) provides that a claimant will be disqualified from receiving unemployment benefits if she is discharged from employment for misconduct connected with work.

> [A]n employee is guilty of "misconduct
> connected with his work" when he <u>deliberately</u>
> violates a company rule reasonably designed
> to protect the legitimate business interests
> of his employer, or when his acts or
> omissions are of such a nature or so
> recurrent as to manifest a <u>willful</u> disregard
> of those interests and the duties and
> obligations he owes his employer.

<u>Branch v. Virginia Employment Comm'n</u>, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978). "Whether an employee's behavior constitutes misconduct, however, is a mixed question of law and fact reviewable by this court on appeal." <u>Israel</u>, 7 Va. App. at 172, 372 S.E.2d at 209. We have previously held that insubordination can constitute misconduct connected with work. <u>See</u> <u>Wood v. Virginia Employment Comm'n</u>, 20 Va. App. 514, 518-19, 458 S.E.2d 319, 321 (1995).

- 4 -

Vanwinkle's insubordination and exacerbation of the conflict with Taylor demonstrated a deliberate disregard for the interests of her employer. In the presence of Taylor and other customers, she interfered with Fletcher's attempts to resolve the situation by continually interrupting him and telling him how he should be handling the matter. She implicitly threatened the customer by asking if Taylor wanted to "discuss this outside."

Once the customer had left the store, instead of proceeding directly to her car and going home, Vanwinkle again interjected herself into the conversation Fletcher was having with Taylor. She made a rude gesture to the customer and, after Fletcher again told her to go home, again tried to intervene in the conversation. Accordingly, the evidence contained in the record supports the commission's finding that Vanwinkle's actions constituted insubordination and a prima facie case of misconduct connected with work.

"Once the employer has borne the burden of showing misconduct connected with the work, . . . the burden shifts to the employee to prove circumstances in mitigation of his or her conduct." Virginia Employment Comm'n v. Gantt, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, aff'd on reh'g en banc, 9 Va. App. 225, 385 S.E.2d 247 (1989).

While Vanwinkle was subjected to abusive language by Taylor, this did not grant her license to interfere with Fletcher's attempts to resolve the matter. Her behavior also tended to

inflame the conflict with Taylor. Further, once the customer was outside of the store, Vanwinkle intentionally placed herself in a position where she could be provoked. The record supports the commission's finding that Vanwinkle presented insufficient evidence of mitigating circumstances. Accordingly, the commission did not err in disqualifying her from receiving unemployment benefits.

<u>Affirmed.</u>
